# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-261


**THE NEW IBERIA BUDDHIST TEMPLE**

**VERSUS**

**MARN SIKANG, ET AL.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 125816
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


**ELIZABETH A. PICKETT**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Marc T. Amy, and Elizabeth A. Pickett, Judges.


**REVERSED AND REMANDED.**


**Roger P. Hamilton, Jr.**
**Attorney at Law**
**P. O. Box 12625**
**New Iberia, LA 70562-2625**
**(337) 519-7180**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
    **The New Iberia Buddhist Temple**


**Rusty L. Messer**
**Earl & Messer**
**9497 Brookline Ave.**
**Baton Rouge, LA 70809**
**(225) 687-1111**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
    **The New Iberia Buddhist Temple**

**Vivian Veron Neumann**
**Attorney at Law**
**405 W. Main St.**
**Lafayette, LA 70501**
**(337) 501-6782**
**COUNSEL FOR DEFENDANT-APPELLEE:**
**Marn Sikang**
**Bountheung Chnakonsy**
**Bounlrau Thanyavong**

**David Y. Lamm**
**Attorney at Law**
**P. O. Box 9710**
**New Iberia, LA 70562**
**(337) 321-6535**
**COUNSEL FOR DEFENDANT-APPELLEE:**
**Marn Sikang**
**Bountheung Chnakonsy**
**Bounlrau Thanyavong**

**Holden Hoggatt**
**Hoggatt Law Group, APLC**
**298 Louisiana Road**
**Franklin, LA 70538**
**(337) 368-6347**
**COUNSEL FOR DEFENDANT-APPELLEE:**
**Marn Sikang**
**Bountheung Chnakonsy**
**Bounlrau Thanyavong**

**PICKETT, Judge.**

The appellant, The New Iberia Buddhist Temple (the Temple), appeals a judgment of the trial court appointing a receiver to liquidate the assets of the Temple and dissolving the non-profit corporation.

## FACTS

On February 26, 2015, the Temple initiated this litigation by filing a Petition for a Temporary Restraining Order against former members of the board of directors of the Temple, Marn Sikang, Bountheng Chankensy, and Bounlrau Thanyavong. The petition alleged that a new board of directors had been elected, and these former directors had attempted to evict the current attendees of the Temple by placing a notice of eviction on the door of the Temple. The petition asked that the former directors be prohibited from being on the property of the Temple. The trial court granted the temporary restraining order and set a hearing for a preliminary injunction on March 31, 2015.

At the March 31, 2015 hearing, the parties stipulated that the defendants would be permitted to worship at the Temple provided they do not disrupt the services. Further, the parties agreed by the terms of the consent judgment to submit the issues in this dispute to "binding mediation." Finally, the parties agreed that neither the monk nor any other party would alienate any of the assets of the Temple pending the outcome of the mediation. A consent judgment with these terms was signed by the trial court on May 18, 2015.

While mediation was pending, the Temple filed a Rule for Contempt and/or Motion to Authorize the Board of Directors to Access the Bank Account and Other Legal Documents on July 8, 2016. The Temple alleges that the defendants changed the board of directors information with the Secretary of State and changed the access of the Temple's bank account so only the defendants had access. In

response to the Rule for Contempt, the defendants filed a Memorandum in Opposition to Plaintiffs' Contempt Rule, Petition for Declaratory Relief, and for Hearing on Injunctive & Other Relief, wherein they asserted that the election by which the officers purporting to represent the Temple were chosen was not held in compliance with the Temple's articles of incorporation. Thus, they argue that they remain the duly elected officers of the Temple pending a valid election, and their actions in securing the bank account and reporting the members of the board of directors to the Secretary of State were valid exercises of their authority. They also claim that the monk hired by the Temple sowed division among the members before he fled to his home in Laos.

On March 14, 2017, the trial court, in response to the complaints by the defendants that they could not freely enter the Temple, ordered all members of the Temple, including the defendants, to be allowed free access to the Temple for worship. The transcript of that hearing reflects that the mediation was unsuccessful, and that the previous consent judgment was no longer in place. A hearing was set for April 11, 2017. The trial court also denied the Rule for Contempt at that time.

On April 19, 2017, the Temple filed a Peremptory Exception of No Right of Action, claiming that the defendants were no longer members of the Temple and therefore lack the procedural capacity to file a countersuit for declaratory relief. The Temple further filed an Answer denying the central claims of the defendants' petition for declaratory relief.

The trial court held a hearing on these matters on April 19, 2017. At the outset of the hearing, the trial court elicited from counsel for the Temple the names of the people acting as officers on behalf of the Temple. The trial court heard testimony about the circumstances of the election in which these new directors

2

were chosen and the acrimony among the current members of the Temple and the defendants, who had been founding members of the Temple. Without specifically concluding that the election by which the new officers were chosen was invalid, the trial court dissolved the board of directors of the Temple and ordered a Special Master appointed for the purpose of conducting an election in compliance with the Temple's articles of incorporation. He ordered the plaintiffs and the defendants to submit a list of members of the Temple entitled to vote in an election and a slate of candidates for the board of directors to the Special Master through their attorneys. The new election was set for May 6, 2017. The trial court, calling his ruling an interlocutory order, further stated that if this last attempt at settling the disputes among the congregation failed, he would dissolve the Temple corporation and distribute its assets to another charity.

On August 15, 2017, the trial court reconvened to consider this matter. David Lamm, the Special Master appointed to conduct the election, testified that the defendants sent notice that they did not intend to participate because they felt a sense of hostility or inability for them to participate. The defendants did not submit a list of members or a slate of nominations for officers. Pon Foreman, who is aligned with the defendants in this suit, testified that their group did not participate because they felt threatened by the behavior of the plaintiffs over the last three years, and they already felt as though they lost. The plaintiffs stipulated that the remaining defendants would offer the same testimony as Ms. Foreman.

In making its ruling, the trial court stated:

> Ladies and gentlemen of the audience, I had hoped the following of a new election, and election of officers could've put aside the animosity that I knew existed back in April when I ordered the election. I was wrong. It did not put aside animosity. I had hoped it would had. I hoped giving you a new start could allow you to continue to forward as a community and more importantly the religious community in which you formed. I made a mistake. The

3

election did not succeed in what I had hoped for. Consequently, and I do this with a heavy heart, I'm going to reappoint Mr. David Lamm as a special master in this case. I declare the New Iberia Buddhist Temple, Incorporated and nonprofit corporation need to be placed in liquidation and be liquidated accordingly by Mr. David Lamm at the direction of the Court.

Pressed by the plaintiffs to rule on whether the election results were valid, the trial court found that Mr. Lamm did conduct a valid election, but the "results were tainted by the actions of others unbeknownst to Mr. Lamm[.]" The trial court signed a judgment in conformity with his oral ruling on October 11, 2017. The written judgment did not rule on the validity of the election, though it declared that all motions and exceptions filed or heard in this matter are denied as moot.

The plaintiffs now appeal the judgment of the trial court

## ASSIGNMENTS OF ERROR

The Temple asserts two assignments of error:

1. The trial court erred in finding that the Religious Nonprofit Corporation should be dissolved without a petition to Dissolve being filed or a prayer for the remedy being supported by the pleadings in accordance with La.R.S. 12:143.

2. The trial court erred [in] failing to uphold the election results as ordered by the trial court, and failing to rule on the No Right of Action filed by the Temple.

## DISCUSSION

The Temple's first assignment of error is predicated on La.R.S. 12:143, which was repealed by the legislature effective January 1, 2015. *See* La.Acts 2014, No. 328, § 5. The law governing the dissolution of nonprofit corporations is found at La.R.S. 12:249 et seq. Involuntary dissolution, as here, is governed by La.R.S. 12:251, which states, in pertinent part:

A. The court may entertain a proceeding for involuntary dissolution under its supervision when it is made to appear that:

(1) The corporate assets are insufficient to pay all just demands for which the corporation is liable, or to

4

afford reasonable security to those who may deal with it; or

   (2) The objects of the corporation have wholly failed, or are entirely abandoned, or their accomplishment is impracticable; or

   (3) It is beneficial to the interests of the members that the corporation should be liquidated and dissolved; or

   (4) The directors are deadlocked in the management of the corporate affairs, and the members are unable to break the deadlock; or

   (5) The members are deadlocked in voting power, and have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors; or

   (6) The corporation has been guilty of gross and persistent ultra vires acts; or

   (7) Judgment has been entered annulling, vacating or forfeiting the corporation's articles and franchise in accordance with the provisions of R.S. 12:262; or

   (8) (a) A receiver has been appointed to take charge of the corporation's property, and either (b) there is no reasonable prospect of return of control of the corporation to its members within a reasonable time or (c) the corporation is operating at a loss and there is no reasonable prospect of restoring it to profitable operation within a reasonable time.

   B. An involuntary proceeding for dissolution may be instituted against a corporation by either a member; or a creditor whose claim has been reduced to judgment, on which execution has been issued and returned "nulla bona"; or a receiver appointed to take charge of the corporation's property.

In this case, no member of the corporation has sought to institute dissolution proceedings, there are no allegations of any creditors, and the Special Master is not a receiver as set forth in La.R.S. 12:258-260. Thus, the trial court committed an error of law in dissolving the corporation involuntarily on its own motion.

5

The judgment of the trial court is reversed.  The issues raised in the second assignment of error were deemed moot by the trial court.  We find these issues are properly reserved for the trial court to rule on in the first instance on remand.

## CONCLUSION

The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.  Costs of this appeal are to be divided equally between The Temple and the defendants.

**REVERSED AND REMANDED.**